# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 168

OCTOBER TERM, A.D. 2014

December 23, 2014

ROBERT OWEN MARSHALL, III,

Appellant
(Defendant),

v.

S-14-0073

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellant:*

Office of the Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; James Kaste, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Caleb C. Wilkins, Student Intern.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]   Robert Owen Marshall, III pleaded guilty to a third or subsequent offense of possession of a controlled substance, which is a felony, and misdemeanor driving while under the influence.  On appeal, he claims the district court erred by ordering him to receive and pay for a substance abuse assessment and by relying on the assessment at sentencing to determine he was a qualified offender and recommend he receive substance abuse treatment while incarcerated.

[¶2]   We affirm.

## ISSUE

[¶3]   We restate Mr. Marshall's appellate issue as:

Did the district court act in excess of its statutory authority when it ordered Mr. Marshall to undergo and pay for a substance abuse assessment and then used the results to determine that he was a "qualified offender" and in need of substance abuse treatment?

The State presents a similar issue.

## FACTS

[¶4]   Mr. Marshall pleaded guilty to a third or subsequent offense of possession of a controlled substance, which was a felony under Wyo. Stat. Ann. § 35-7-1031(c)(i) (LexisNexis 2013),[1] and misdemeanor driving while under the influence in violation of Wyo. Stat. Ann. § 31-5-233(b)(iii) (LexisNexis 2013).[2]  After accepting Mr. Marshall's

---

[1] Section 35-7-1031(c)(1) states in relevant part:

> (c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. . . .
>
> > (i)      . . . Any person convicted for a third or subsequent offense under this paragraph, including convictions for violations of similar laws in other jurisdictions, shall be imprisoned for a term not more than five (5) years, fined not more than five thousand dollars ($5,000.00), or both.

[2] Section 31-5-233(b)(iii) states:

> (b) No person shall drive or have actual physical control of any vehicle within this state if the person: . . .
>
> > (iii) To a degree which renders him incapable of safely driving:

guilty pleas, the district court ordered a presentence investigation (PSI), including a substance abuse assessment under the Addicted Offender Accountability Act (AOAA), Wyo. Stat. Ann. §§ 7-13-1301 through 1304 (LexisNexis 2013). The substance abuse assessment recommended that Mr. Marshall receive clinically managed high intensity residential treatment for substance abuse.

[¶5]   The district court considered the substance abuse assessment, together with Mr. Marshall's long history of substance abuse violations documented in the PSI, before imposing sentence. The district court found Mr. Marshall to be a "qualified offender" under the AOAA and ordered him to serve a term of incarceration of two to four years with the recommendation that he successfully complete substance abuse treatment while in prison through the Intensive Treatment Unit (ITU) or a comparable program. He was also ordered to pay $75.00 for the substance abuse assessment. Mr. Marshall filed a timely notice of appeal.

## DISCUSSION

[¶6]   The primary question in this case is whether the district court had the statutory authority to order Mr. Marshall to receive and pay for a substance abuse assessment. That question is a matter of statutory interpretation which is subject to *de novo* review. *Coleman v. State,* 2005 WY 69, ¶ 11, 115 P.3d 411, 414 (Wyo. 2005).

> In interpreting statutes, we primarily determine the legislature's intent. If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous." We construe together all parts of the statutes in pari materia, and, in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose.
>
> When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the

---

(A) Is under the influence of alcohol;

(B) Is under the influence of a controlled substance; or

(C) Is under the influence of a combination of any of the elements named in subparagraphs (A) and (B) of this paragraph.

> public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.
>
> *Merrill v. Jansma,* 2004 WY 26, ¶ 28, 86 P.3d 270, 284–85 (Wyo. 2004) (citations omitted).

*Stanton v. State,* 2006 WY 31, ¶ 12, 130 P.3d 486, 491 (Wyo. 2006). *See also Daves v. State,* 2011 WY 47, ¶ 15, 249 P.3d 250, 256 (Wyo. 2011).

[¶7]    The AOAA provides district courts with the means of identifying a defendant's drug or alcohol problems and crafting a sentence to fit the circumstances. *Janpol v. State,* 2008 WY 21, ¶ 20, 178 P.3d 396, 403 (Wyo. 2008); *Greene v. State,* 2009 WY 99, ¶ 18, 214 P.3d 222, 227 (Wyo. 2009).   To that end, the act requires that any defendant convicted of a felony receive a substance abuse assessment.  Section 7-13-1302.   *See also Doherty v. State,* 2006 WY 39, ¶ 31, n.2, 131 P.3d 963, 972, n.2 (Wyo. 2006). Based upon the results of the substance abuse assessment, the district court may declare the defendant to be a "qualified offender," which is defined as "a person convicted of a felony whom the court finds has a need for alcohol or other drug treatment."  Section 7-13-1301(a)(iv).

[¶8]    Once a defendant is found to be a qualified offender, the district court has authority under the AOAA and relevant criminal statutes to order treatment for substance abuse while the defendant is incarcerated or to sentence him to probation or a suspended sentence and require treatment as a condition of release.   Section 7-13-1303.   *See also Gomez v. State,* 2013 WY 134, ¶ 7, 311 P.3d 621, 623 (Wyo. 2013); *Duke v. State,* 2009 WY 74, ¶¶ 33-35, 209 P.3d 563, 573-74 (Wyo. 2009).

[¶9]    The district court ordered Mr. Marshall to receive a substance abuse assessment in accordance with § 7-13-1302:

> <u>All persons convicted of</u> a third misdemeanor under W.S. 31-5-233(e) or <u>a felony shall receive, as a part of a presentence report, a substance abuse assessment. The cost of the substance abuse assessment shall be assessed to and paid by the offender.</u> A person who has undergone a substance abuse assessment pursuant to W.S. 31-5-233(e) may receive a second assessment under this section if the court finds that enough time has passed to make the first assessment inaccurate.

(Emphasis added.)

[¶10] Mr. Marshall does not assert that the district court failed to advise him of the consequences associated with the AOAA. *See generally Sena v. State,* 2010 WY 93, 233 P.3d 993 (Wyo. 2010) (discussing advisements required by W.R.Cr.P. 11 in light of the AOAA). In fact, the district court advised Mr. Marshall at his arraignment that, if he pleaded guilty, he could be ordered to be evaluated for substance abuse and required to pay the fee associated with the assessment. Mr. Marshall agreed that the earlier advisements were incorporated by reference into his change of plea hearing.

[¶11] Mr. Marshall claims, however, that the district court did not have the authority to order the substance abuse assessment because he was not "convicted" of a felony under the AOAA. He refers us to the definition of "convicted" in § 7-13-1301(a)(iii):

> (iii) "Convicted" means an unvacated determination of guilt by any court having legal jurisdiction of the offense and from which no appeal is pending and includes pleas of guilty and nolo contendere. For purposes of W.S. 7-13-1302 only, "convicted" shall include dispositions pursuant to W.S. 7-13-301, 7-13-302(a), 35-7-1037 or deferred prosecutions when ordered. Otherwise, for purposes of this act, "convicted" shall not include dispositions pursuant to W.S. 7-13-301, 7-13-302(a), 35-7-1037 or deferred prosecutions[.]

(Emphasis added.) He asserts that, since he appealed his judgment and sentence, he did not meet the definition of "convicted" and, therefore, could not be subject to the substance abuse assessment requirements.

[¶12] Mr. Marshall's interpretation of the AOAA is overly narrow. Considering all of the statutory sections *in pari materia*, it is clear that the legislature intended that the substance abuse assessment occur prior to sentencing. Section 7-13-1302 specifically mandates that the assessment will be part of the presentence investigation report. In fact, a failure to order a substance abuse assessment would be in violation of the statute. Obviously, then, the assessment must be performed before a defendant appeals his judgment and sentence. Further, at the time Mr. Marshall pleaded guilty and the district court ordered the assessment, there was no appeal pending. The clear legislative intent was to require the district court to address a defendant's substance abuse issues during sentencing, but if a defendant's conviction is later overturned, any treatment requirements under the AOAA would also be vacated.

[¶13] If we were to accept Mr. Marshall's interpretation of the AOAA, the underlying purposes of the act, including identification and treatment of addicted offenders, would be completely undermined. It is worth noting that often those who are most in need of

substance abuse treatment are the most reluctant to seek or complete it. Mr. Marshall's argument that a qualified offender may avoid evaluation and treatment by simply appealing his conviction would result in a complete failure to help those who should benefit from the AOAA. We do not "construe statutes in a manner which renders any portion meaningless or produces absurd results." *In re WJH,* 2001 WY 54, ¶ 7, 24 P.3d 1147, 1150-51 (Wyo. 2001) (citations omitted). To construe the AOAA as advocated by Mr. Marshall would render its provisions essentially meaningless if an offender did not want to be evaluated or treated.

[¶14] Mr. Marshall challenges the AOAA evaluation and treatment requirements because, during a previous period of incarceration, he was unsuccessful in the ITU as a result of the Wyoming Department of Corrections' refusal to accommodate his disability, including his chronic pain and back problems. There is no official documentation of his previous ITU experience in the record before us and, in any event, the district court was still obligated under the AOAA to order a substance abuse assessment and consider its results in crafting a sentence.

[¶15] The district court had discretion, after determining Mr. Marshall was a qualified offender, to fashion a sentence that included substance abuse treatment, as well as other penalties such as incarceration. *See* § 7-13-1303; *Doherty,* ¶ 35, 131 P.3d at 974. Certainly, Mr. Marshall's criminal record and the substance abuse assessment supported its finding that Mr. Marshall was a qualified offender and in need of treatment. Although he maintains in general that he should not be required to receive in-patient treatment while in prison, he does not specifically attack the district court's ruling that treatment was appropriate in his case. The only argument he makes in this regard is that an earlier substance abuse assessment used to evaluate him for another program recommended only out-patient treatment. The district court was aware of the earlier assessment when it issued the sentence, and Mr. Marshall does not explain how the district court erred by relying on the later assessment to order more intensive treatment. In point of fact, the district court did not expressly order inpatient treatment but simply recommended that he "successfully complete ITU or [a] similar program." The district court stated at the sentencing hearing that it intended to give the WDOC flexibility in finding a suitable program for Mr. Marshall. The district court's decision was in accordance with the law.

[¶16] Affirmed.